Weekly Edition, One Year (50 issues) Payable in
Advance ...................................... $15.00

Discount for advance payment $3.00, making the
net price ...................................... 12.00

Including Quarterly Digest, to paid subscribers,
no extra charge.

Including Binding of Weekly Parts at end of year,
if paid in advance, net........................ 13.50

Including One Annual Digest, at end of year, and
binding of weekly parts, paid in advance, net.. 16.00

Including Cinque Digest and Year's Subscription..$18.00

Single Numbers .............................. .35

Receiving Abstract after expiration date, considered as authorized continuation of subscription.

### THE LAW ABSTRACT COMPANY

Office, Editorial Rooms and Library, 13916 Euclid Ave.
Cleveland, O.

### STAFF

Jay F. Laning....................Business Director
Sheldon R. Laning..................Editorial Director
Sam H. Torrey....................Circulation Manager

### RETROSPECTIVE AND PROSPECTIVE

Five years of gowth and success is what the Abstract offers to its friends, as a commendation, at the beginning of its sixth year of existence, upon which it is now starting. At the outset it was the pioneer of endeavors to supply the legal profession with a medium of quick and efficient dissemination of important precedents. Its methods were new, and those who did not like them predicted its early passing. But it survived criticism and opposition, and we believe that it is now being generally accredited with having solved the problem of rapid, desirable court reporting.

The acquaintance and experience of its projector gave him an adequate knowledge of what was wanted as a pathway between the court room and the law office, and what would suffice for it, and what would prepare and promote the way. While it has accomplished much in blazing the way to its present position, it would be strange if it had reached the saturation point in its work. The same genius for work and courage that has so far been displayed in the past five years, will be its example for this and subsequent years, and further progress may be expected.

### THE MID-WINTER MEETING
### OHIO STATE BAR ASSOCIATION

This annual gathering of the members of the Ohio State Bar Association is set for January 26, 27 and 28, 1928, but two weeks hence. It will be held at Columbus. Everything is being made ready for the occasion. An excellent program has been prepared and announced. The City, by its increases of hotels, will be able to take good care of all who attend the meeting. A big attendance is expected.

## NORTHWEST BOULEVARD CO. v. CLARK et.

Ohio Appeals, 2nd Dist., Franklin Co.

No. 1553. Decided April 7, 1927.

**First Publication of this Opinion.**

189a. BUILDING RESTRICTIONS — Will not be enforced on complaint of adjoining owner who has violated them, and who has waited for expenditure of $7,000 before making complaint.

Appeal from Common Pleas.

Petition dismissed.

Postelwaite & Bricker, Columbus, for Boulevard Co.

Eagleson & Eagleson and C. E. Nixon, Columbus, for Clark et.

BY THE COURT.

This is an action to enforce, by way of injunction, a 40-foot setback restriction contained in the defendant's title deeds. The restrictions are local and apply chiefly, if not exclusively, to the particular block where the defendants' property is located. They are contained in a title deed of the defendants' predecessor in title and were brought into the defendants' deeds by way of general recital. When the defendants began their building they were of the impression that the setback limit was 30 feet, and, upon that idea, they located their building, made excavations, erected the frame work and roofed the building before they actually knew that the setback restriction called for 40 feet instead of 30 feet. The ordinance setback limit was 30 feet and the first complaint was made by the adjoining property owner, to the village officers. But, as there was no violation of the village law, the matter was dropped so far as the village was concerned. The adjoining property owner, however, notified the Boulevard Company of the violation of the building restrictions and the Company, in an effort to adjust matters, sought to have all interested parties agree to a 30 foot setback in lieu of the 40 foot setback provision of the deeds. Several interested parties were consulted, and agreed to make the change, but the adjoining owner, Mrs. Glassburn, refused to make the concession and insisted upon the enforcement, by the Boulevard Co., of the restriction. So far as this action is concerned, looking through forms as a Court of Equity always does, Mrs. Glassburn is the real party in interest and is the moving force behind the prosecution.

It appears that something like $7,000 was expended by the defendants, in the erection of the two houses involved, before notice was given them, by anyone, that there would be an effort to enforce the setback restrictions. Inasmuch as the party principally interested lived next door, this would give rise to the presumption of lack of vigilance. Equity acts, especially in cases of this kind, on behalf of those who are vigilant and who assert their rights diligently so as to protect the opposite party from loss.

A still more significant circumstance is the fact that Mrs. Glassburn has violated the building restriction and that neither she nor the

Boulevard Co. are making any effort to enforce the restriction, as to her. Mrs. Glassburn's title deeds contain exactly the same restriction and yet she had constructed, and is maintaining, a part of her building, which she calls a sun porch, which extends a considerable distance within the restriction area. This so called porch is, according to the evidence, an enclosed room.

This suit is being maintained upon the demand of Mrs. Glassburn and, in her interest, lacks equity for the reason that she is the first violator of the provision she now seeks to enforce. Under the circumstances of the present case we are of opinion that the plaintiff is not entitled to a decree and that the petition should be dismissed.

(Ferneding, Kunkle and Allread, JJ., concur.)